NUMBER 13-07-00008-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS


 

CORPUS CHRISTI - EDINBURG


 


XIOMARA GUZMAN, Appellant,


v.
 


INTER NATIONAL BANK, Appellee.

 


On appeal from the County Court at Law No. 2


of Hidalgo County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Chief Justice Valdez



 Appellant, Xiomara Guzman, appeals from the granting of a summary judgment in
favor of appellee, Inter National Bank ("INB"). By one issue, appellant contends there are
fact issues precluding summary judgment. We affirm.

I. Background 

 On January 30, 2003, appellant entered into a "contract agreement" with La Rosita
Homes, Inc. ("La Rosita"). The contract provided that La Rosita would build appellant a
home for the amount of $89,350. The lot on which the home was to be built was previously
purchased by appellant on February 1, 2002. At the time appellant entered into the
contract with La Rosita, she owed approximately $16,131.44 on the lot. According to
appellant, the $89,350 contract price included the pay-off on the remaining balance of the
lot. The contract, however, was silent as to whether the pay-off of the lot was included in
the contract price. 

 With the assistance of Carlos Perez ("Perez"), salesperson for La Rosita, appellant
sought an interim construction loan through INB. As a prerequisite for approval, however,
INB required appellant to obtain permanent financing through another financial institution. 
Appellant complied and obtained a thirty-year fixed mortgage from Wells Fargo Home
Mortgage, Inc., in the amount of $90,690. INB, in turn, agreed to give appellant a six-month interim loan in the amount of $77,250. 

 Edwards Abstract & Title Ltd., ("Edwards Abstract") at the request of INB, performed
the closing on March 21, 2003. Just prior to closing day, however, Mary Barrientos
("Barrientos"), escrow officer and manager of Edwards Abstract, noticed the disparity
between the amount loaned by INB ($77,250), and La Rosita's quoted contract price
($89,350). In communicating with INB, Barrientos learned that INB planned first to
advance the initial pay-off of appellant's lot ($16,131.44), thus leaving $61,118.56 for
construction. Barrientos was then informed by La Rosita that it planned to place a lien on
appellant's property, covering the difference between its quoted contract price ($89,350)
and the amount loaned by INB for construction ($61,118.56). Thus, at La Rosita's urging,
Barrientos prepared a mechanics' lien note in favor of La Rosita Construction in the
amount of $28,231.44. Barrientos was never informed, however, that La Rosita's quoted
contract price also included the pay-off of appellant's lot. Appellant attended the closing
with Perez from La Rosita Construction, where she signed various documents, including
the $77,250 promissory note in favor of INB and the $28, 231.44 mechanics lien note in
favor of La Rosita Construction. INB's promissory note was set to mature on September
18, 2003, approximately six-months after closing. By the date of maturity, however,
construction of appellant's home was far from complete. Furthermore, Wells Fargo,
because of the liens placed on appellant's property by INB and La Rosita ($77,250 +
$28,231.44 = $105,481.44) exceeded the amount that it was willing to lend ($90,690),
declined to provide appellant with any sort of permanent financing. 

 Appellant failed to make any payments to either INB or La Rosita Construction, and
on February 3, 2004, INB foreclosed upon appellant's lot and purchased the lot with
improvements at the foreclosure sale for $70,000. 

 On September 14, 2004, appellant filed suit against INB, Edwards Abstract, and La
Rosita Construction, alleging common law fraud, negligence, gross negligence, and
violations of the Texas Deceptive Trade Practices Act. (1) INB moved for summary judgment
on both traditional and no-evidence grounds. The trial court granted INB's motion for
summary judgment but did not state the grounds for granting the motions. This appeal
ensued. 

II. Standard of Review 

 The standards for reviewing summary judgment are well established. See Tex. R.
Civ. P. 166a(c), 166a(i); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex.
1985). When a defendant moves for summary judgment under rule 166a(i), asserting that
no evidence exists as to one or more elements of a plaintiff's claim, the burden is on the
plaintiff to present evidence to raise a genuine issue of material fact on each of the
challenged elements on which the plaintiff has the burden of proof at trial. Tex. R. Civ. P. 
166a(i); Gen. Mills Rest., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.-Dallas
2000, no pet.). 

 Under a traditional motion for summary judgment, the movant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. Tex. R.
Civ. P. 166a(c); Sw. Elec. Power. Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002). After the
movant produces evidence sufficient to show it is entitled to summary judgment, the
nonmovant must then present evidence raising a genuine issue of material fact. See
Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996). 

 When a trial court's order granting summary judgment does not specify the ground
or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of
the theories advanced are meritorious. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 242
(Tex. 2001). III. Analysis

A. Negligence 

 To sustain a cause of action for negligence, appellant had to show (1) the existence
of a duty, (2) breach of that duty, and (3) damages proximately caused by the breach of
that duty. Mellon Mortgage Co. v. Holder, 5 S.W.3d 654, 663 (Tex. 1999); Koepke v.
Martinez, 84 S.W.3d 393, 396 (Tex. App.-Corpus Christi, 2002, pet. denied); Hanselka v.
Lummus Crest, Inc., 800 S.W.2d 665, 667 (Tex. App.-Corpus Christi, 1990, no writ). In determining whether the defendant was under a duty, the court will consider
several interrelated factors, including the risk, foreseeability, and likelihood of injury
weighed against the social utility of the actor's conduct, the magnitude of the burden of
guarding against the injury, and the consequences of placing the burden on the defendant. 
Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). Of all these
factors, foreseeability of the risk is "the foremost and dominant consideration." Id. (quoting
El Chico Corp. v. Poole, 732 S.W.2d 306, 311 (Tex. 1987)). 

 Whether a duty exists is a question of law for the court. Bird v. W.C.W., 868 S.W.2d
767, 769 (Tex. 1994). To maintain her negligence action against INB, appellant first had
to establish that INB owed some duty to her. Miller-Rogaska, Inc. v. Bank One, Texas,
N.A., 931 S.W.2d 655, 663 (Tex. App.-Dallas 1996, no writ). 

 Appellant argues that given her lack of education, her inability to read or speak
English, the fact that she was not represented by legal counsel in her dealing with INB, and
because she had no prior experience in dealing with institutional lenders, "it clearly would
have been foreseeable to a lender in defendant's position that plaintiff could be financially
harmed." We read appellant's argument to mean that INB had a legal duty to warn her
about or otherwise disclose the $28,000 mechanic's lien note. 

 Non-disclosure is neither fraudulent nor negligent unless there is a duty to disclose. 
See Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001). Generally, a duty to disclose
arises only in confidential or fiduciary relationships. Insurance Co. of North America v.
Morris, 981 S.W.2d 667, 674 (Tex. 1998); Fleming v. Tex. Coastal Bank of Pasadena, 67
S.W.3d 459, 461 (Tex. App.-Houston [14th Dist.] 2002, pet. denied). The relationship
between a bank and its customer is generally not a fiduciary one. See Bank One, Texas,
N.A. v. Stewart, 967 S.W.2d 419, 442 (Tex. App.-Houston [14th Dist.] 1998, pet. denied). 

 In her deposition, appellant admitted to entrusting the whole loan process to Carlos
Perez, an employee of La Rosita Construction. She further admitted that Perez contacted
both Wells Fargo and INB on her behalf, and that Perez explained to her that INB was
providing interim financing for construction of her home. Because appellant had never
done business at the bank before, there is no evidence of a long-standing relationship of
trust that might create an exception. See Fleming, 67 S.W.3d at 461. Moreover,
appellant's complaints do not relate to her transaction with INB; it is undisputed that INB
advanced the initial pay-off of appellant's lot, and also paid various draw requests issued
by La Rosita and signed by appellant. Based on these facts, we hold that INB was under
no duty to disclose the $28,000 mechanics lien note. See Morris, 981 S.W.2d at 674
(holding that company acting only as surety for investor's notes had no duty to disclose
unfavorable facts it knew about investment company's president). Appellant's negligence
claim fails as a matter of law. (2)

B. Gross Negligence

 Appellant next asserts that the trial court erred in granting INB's summary judgment
on her gross negligence claim. "Gross negligence involves two components:" 

 (1) viewed objectively from the actor's standpoint, the act or omission
complained of must involve an extreme degree of risk, considering the
probability and magnitude of the potential harm to others; and

 

 (2) the actor must have actual, subjective awareness of the risk involved, but
nevertheless proceed in conscious indifference to the rights, safety, or
welfare of others. 


Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001); accord Transp. Ins.
Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). 

 In conclusory fashion, appellant argues the following constitutes evidence of gross
negligence: the fact that INB was aware of the $28,231.44 mechanic's lien note, did
nothing to correct it, and then proceeded to foreclose on appellant's property. First,
appellant fails to cite to any authority which holds that a lender must disclose or correct
third party transactions. Second, as noted above, a duty of disclosure arises only in
confidential or fiduciary relationships. See Morris, 981 S.W.2d at 674. As we have already
held that INB's failure to disclose or correct the note was insufficient evidence to support
appellant's negligence claim, we would be hard-pressed to recognize that the same factual
circumstance supports appellant's gross negligence claim. Moreover, appellant makes no
attempt to explain how INB's actions meets the objective element of gross negligence --
that the act or omission complained of involved an extreme degree of risk considering the
probability and magnitude of the potential harm to others. Quite simply, there is no
evidence that leads us to conclude that INB proceeded in a grossly negligent manner. 
Thus, we conclude the evidence was insufficient to establish appellant's gross negligence
claim. 

C. DTPA 

 Appellant next asserts that the trial court erred in granting INB's summary judgment
on its DTPA claim. Appellant's briefing on this issue is one paragraph long, contains not
a single citation to any legal authority, fails to cite the elements of a DTPA claim, or specify
which acts prohibited by the DTPA were allegedly committed by the bank. See Tex. R.
App. P. 38.1(h). Even interpreting appellant's brief liberally, we cannot conclude that she
has adequately briefed this issue. See Proctor v. White, 155 S.W.3d 438, 441 (Tex.
App.-El Paso 2004, pet. denied) (finding appellants waived challenge to summary
judgment on several claims because their argument consisted of several pages referring
to evidence in support of factual allegations without a single reference to relevant case or
legal principle). Appellant is required to attack every independent ground upon which the
trial court could have granted summary judgment as to this claim. See Ramco Oil & Gas
Ltd. v. Anglo-Dutch (Tenge) L.L.C., 207 S.W.3d 801, 826 (Tex. App-Houston [14th Dist.]
2006, pet. denied). Because appellant has failed to do so, we conclude the trial court did
not err in granting summary judgment as to appellant's DTPA claim. 

IV. Conclusion

 We conclude that the trial court did not err in granting INB's no evidence motion for
summary judgment. (3) We overrule appellant's lone issue on appeal and affirm the
judgment of the trial court.


 _______________________

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 20th day of March, 2008.
1. On October 18, 2006, appellant forwarded to the trial court a proposed order for ruling on INB's
summary judgment motions. The proposed order included the following language: "that Plaintiff take nothing
by her claim against Inter National Bank for fraud or misrepresentation." On appeal, appellant does not
complain of the entry of summary judgment on her fraud cause of action. Thus, the only remaining claims
in dispute before this Court are for negligence, gross negligence, and alleged violations of the DTPA. 
2. Appellant also argues that because she does not read or speak English, INB had the duty to take
affirmative steps to ensure adequate understanding. We have never recognized such a duty. Indeed, we
have previously held that "the fact that [an] appellant may not be fluent in English did not of itself create such
a confidential relationship as to relieve them from their duty to read the contract documents." Salinas v.
Beaudrie, 960 S.W.2d 314, 320 (Tex. App.-Corpus Christi 1997, no writ); see also De Villagomez v. First Nat'l
Bank-Edinburg, No. 13-04-367-CV, 2005 Tex. App. LEXIS 6175 at *8 (Tex. App.-Corpus Christi Aug. 4, 2005,
pet. denied) (mem. op., not designated for publication). Moreover, a person who signs a contract is presumed
as a matter of law to know its terms. D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist., 848 S.W.2d 226, 230
(Tex. App.-Corpus Christi 1992, writ dism'd w.o.j.); see also Thigpen v. Locke, 363 S.W.2d 247, 251 (Tex.
1962) (charging parties to an arm's-length transaction with a duty to read what they sign). This is true even
in the case of illiteracy or an inability to read English. See Vera v. N. Star Dodge Sales, Inc., 989 S.W.2d 13,
17 (Tex. App.-San Antonio 1998, no pet.); see also de Tamez v. Sw. Motor Transp. Inc., 155 S.W.3d 564,
570 (Tex. App-San Antonio 2004, no pet.) ("[E]ven though English was not his first language, we must
presume, as a matter of law, that [appellant] read and understood the contract, unless he was prevented from
doing so by trick or artifice."). At her deposition, appellant admitted that she failed to read, or request a
translation of, the documents she signed at closing. Thus, to the extent appellant argues that INB had the
legal duty to ensure adequate understanding, we disagree. 

3. Because of our disposition, we need not address whether INB's traditional motion for summary
judgment was properly granted. See Tex. R. App. P. 47.1.