

**NUMBER 13-07-00008-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI ‑ EDINBURG

---

**XIOMARA GUZMAN,** **Appellant,**

**v.**

**INTER NATIONAL BANK,** **Appellee.**

---

**On appeal from the County Court at Law No. 2
of Hidalgo County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Vela
Memorandum Opinion by Chief Justice Valdez**

Appellant, Xiomara Guzman, appeals from the granting of a summary judgment in favor of appellee, Inter National Bank ("INB"). By one issue, appellant contends there are fact issues precluding summary judgment. We affirm.

## I. Background

On January 30, 2003, appellant entered into a "contract agreement" with La Rosita

Homes, Inc. ("La Rosita"). The contract provided that La Rosita would build appellant a home for the amount of $89,350. The lot on which the home was to be built was previously purchased by appellant on February 1, 2002. At the time appellant entered into the contract with La Rosita, she owed approximately $16,131.44 on the lot. According to appellant, the $89,350 contract price included the pay-off on the remaining balance of the lot. The contract, however, was silent as to whether the pay-off of the lot was included in the contract price.

With the assistance of Carlos Perez ("Perez"), salesperson for La Rosita, appellant sought an interim construction loan through INB. As a prerequisite for approval, however, INB required appellant to obtain permanent financing through another financial institution. Appellant complied and obtained a thirty-year fixed mortgage from Wells Fargo Home Mortgage, Inc., in the amount of $90,690. INB, in turn, agreed to give appellant a six-month interim loan in the amount of $77,250.

Edwards Abstract & Title Ltd., ("Edwards Abstract") at the request of INB, performed the closing on March 21, 2003. Just prior to closing day, however, Mary Barrientos ("Barrientos"), escrow officer and manager of Edwards Abstract, noticed the disparity between the amount loaned by INB ($77,250), and La Rosita's quoted contract price ($89,350). In communicating with INB, Barrientos learned that INB planned first to advance the initial pay-off of appellant's lot ($16,131.44), thus leaving $61,118.56 for construction. Barrientos was then informed by La Rosita that it planned to place a lien on appellant's property, covering the difference between its quoted contract price ($89,350) and the amount loaned by INB for construction ($61,118.56). Thus, at La Rosita's urging, Barrientos prepared a mechanics' lien note in favor of La Rosita Construction in the

2

amount of $28,231.44. Barrientos was never informed, however, that La Rosita's quoted contract price also included the pay-off of appellant's lot. Appellant attended the closing with Perez from La Rosita Construction, where she signed various documents, including the $77,250 promissory note in favor of INB and the $28, 231.44 mechanics lien note in favor of La Rosita Construction. INB's promissory note was set to mature on September 18, 2003, approximately six-months after closing. By the date of maturity, however, construction of appellant's home was far from complete. Furthermore, Wells Fargo, because of the liens placed on appellant's property by INB and La Rosita ($77,250 + $28,231.44 = $105,481.44) exceeded the amount that it was willing to lend ($90,690), declined to provide appellant with any sort of permanent financing.

Appellant failed to make any payments to either INB or La Rosita Construction, and on February 3, 2004, INB foreclosed upon appellant's lot and purchased the lot with improvements at the foreclosure sale for $70,000.

On September 14, 2004, appellant filed suit against INB, Edwards Abstract, and La Rosita Construction, alleging common law fraud, negligence, gross negligence, and violations of the Texas Deceptive Trade Practices Act.[1] INB moved for summary judgment on both traditional and no-evidence grounds. The trial court granted INB's motion for summary judgment but did not state the grounds for granting the motions. This appeal ensued.

## II. Standard of Review

---

[1] On October 18, 2006, appellant forwarded to the trial court a proposed order for ruling on INB's summary judgment motions. The proposed order included the following language: "that Plaintiff take nothing by her claim against Inter National Bank for fraud or misrepresentation." On appeal, appellant does not complain of the entry of summary judgment on her fraud cause of action. Thus, the only remaining claims in dispute before this Court are for negligence, gross negligence, and alleged violations of the DTPA.

The standards for reviewing summary judgment are well established. *See* TEX. R. CIV. P. 166a(c), 166a(i); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When a defendant moves for summary judgment under rule 166a(i), asserting that no evidence exists as to one or more elements of a plaintiff's claim, the burden is on the plaintiff to present evidence to raise a genuine issue of material fact on each of the challenged elements on which the plaintiff has the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Gen. Mills Rest., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex. App.–Dallas 2000, no pet.).

Under a traditional motion for summary judgment, the movant must establish that no material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power. Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). After the movant produces evidence sufficient to show it is entitled to summary judgment, the nonmovant must then present evidence raising a genuine issue of material fact. *See Walker v. Harris*, 924 S.W.2d 375, 377 (Tex. 1996).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001).

### III. Analysis

#### A. Negligence

To sustain a cause of action for negligence, appellant had to show (1) the existence of a duty, (2) breach of that duty, and (3) damages proximately caused by the breach of

4

that duty. *Mellon Mortgage* Co. *v. Holder*, 5 S.W.3d 654, 663 (Tex. 1999); *Koepke v. Martinez*, 84 S.W.3d 393, 396 (Tex. App.–Corpus Christi, 2002, pet. denied); *Hanselka v. Lummus Crest*, *Inc.*, 800 S.W.2d 665, 667 (Tex. App.–Corpus Christi, 1990, no writ).

In determining whether the defendant was under a duty, the court will consider several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Of all these factors, foreseeability of the risk is "the foremost and dominant consideration." *Id. (*quoting *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex. 1987)).

Whether a duty exists is a question of law for the court. *Bird v. W.C.W.*, 868 S.W.2d 767, 769 (Tex. 1994). To maintain her negligence action against INB, appellant first had to establish that INB owed some duty to her. *Miller-Rogaska*, *Inc. v. Bank One*, *Texas*, *N.A.*, 931 S.W.2d 655, 663 (Tex. App.–Dallas 1996, no writ).

Appellant argues that given her lack of education, her inability to read or speak English, the fact that she was not represented by legal counsel in her dealing with INB, and because she had no prior experience in dealing with institutional lenders, "it clearly would have been foreseeable to a lender in defendant's position that plaintiff could be financially harmed." We read appellant's argument to mean that INB had a legal duty to warn her about or otherwise disclose the $28,000 mechanic's lien note.

Non-disclosure is neither fraudulent nor negligent unless there is a duty to disclose. *See Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001). Generally, a duty to disclose

5

arises only in confidential or fiduciary relationships. *Insurance Co. of North America v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998); *Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459, 461 (Tex. App.–Houston [14th Dist.] 2002, pet. denied). The relationship between a bank and its customer is generally not a fiduciary one. *See Bank One*, *Texas*, *N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.–Houston [14th Dist.] 1998, pet. denied).

In her deposition, appellant admitted to entrusting the whole loan process to Carlos Perez, an employee of La Rosita Construction. She further admitted that Perez contacted both Wells Fargo and INB on her behalf, and that Perez explained to her that INB was providing interim financing for construction of her home. Because appellant had never done business at the bank before, there is no evidence of a long-standing relationship of trust that might create an exception. *See Fleming*, 67 S.W.3d at 461. Moreover, appellant's complaints do not relate to her transaction with INB; it is undisputed that INB advanced the initial pay-off of appellant's lot, and also paid various draw requests issued by La Rosita and signed by appellant. Based on these facts, we hold that INB was under no duty to disclose the $28,000 mechanics lien note. *See Morris*, 981 S.W.2d at 674 (holding that company acting only as surety for investor's notes had no duty to disclose unfavorable facts it knew about investment company's president). Appellant's negligence claim fails as a matter of law.[2]

---

[2] Appellant also argues that because she does not read or speak English, INB had the duty to take affirmative steps to ensure adequate understanding. We have never recognized such a duty. Indeed, we have previously held that "the fact that [an] appellant may not be fluent in English did not of itself create such a confidential relationship as to relieve them from their duty to read the contract documents." *Salinas v. Beaudrie*, 960 S.W.2d 314, 320 (Tex. App.–Corpus Christi 1997, no writ); *see also De Villagomez v. First Nat'l Bank-Edinburg*, No. 13-04-367-CV, 2005 Tex. App. LEXIS 6175 at *8 (Tex. App.–Corpus Christi Aug. 4, 2005, pet. denied) (mem. op., not designated for publication). Moreover, a person who signs a contract is presumed as a matter of law to know its terms. *D. Wilson Constr. Co. v. McAllen Indep. Sch. Dist.*, 848 S.W.2d 226, 230 (Tex. App.–Corpus Christi 1992, writ dism'd w.o.j.); *see also Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex.

6

## B. Gross Negligence

Appellant next asserts that the trial court erred in granting INB's summary judgment on her gross negligence claim. "Gross negligence involves two components:"

(1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others.

*Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001); *accord Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).

In conclusory fashion, appellant argues the following constitutes evidence of gross negligence: the fact that INB was aware of the $28,231.44 mechanic's lien note, did nothing to correct it, and then proceeded to foreclose on appellant's property. First, appellant fails to cite to any authority which holds that a lender must disclose or correct third party transactions. Second, as noted above, a duty of disclosure arises only in confidential or fiduciary relationships. *See Morris*, 981 S.W.2d at 674. As we have already held that INB's failure to disclose or correct the note was insufficient evidence to support appellant's negligence claim, we would be hard-pressed to recognize that the same factual

---

1962) (charging parties to an arm's-length transaction with a duty to read what they sign). This is true even in the case of illiteracy or an inability to read English. *See Vera v. N. Star Dodge Sales*, *Inc.*, 989 S.W.2d 13, 17 (Tex. App.–San Antonio 1998, no pet.); *see also de Tamez v. Sw. Motor Transp. Inc.*, 155 S.W.3d 564, 570 (Tex. App–San Antonio 2004, no pet.) ("[E]ven though English was not his first language, we must presume, as a matter of law, that [appellant] read and understood the contract, unless he was prevented from doing so by trick or artifice."). At her deposition, appellant admitted that she failed to read, or request a translation of, the documents she signed at closing. Thus, to the extent appellant argues that INB had the legal duty to ensure adequate understanding, we disagree.

circumstance supports appellant's gross negligence claim. Moreover, appellant makes no attempt to explain how INB's actions meets the objective element of gross negligence — that the act or omission complained of involved an extreme degree of risk considering the probability and magnitude of the potential harm to others. Quite simply, there is no evidence that leads us to conclude that INB proceeded in a grossly negligent manner. Thus, we conclude the evidence was insufficient to establish appellant's gross negligence claim.

## C. DTPA

Appellant next asserts that the trial court erred in granting INB's summary judgment on its DTPA claim. Appellant's briefing on this issue is one paragraph long, contains not a single citation to any legal authority, fails to cite the elements of a DTPA claim, or specify which acts prohibited by the DTPA were allegedly committed by the bank. *See* TEX. R. APP. P. 38.1(h). Even interpreting appellant's brief liberally, we cannot conclude that she has adequately briefed this issue. *See Proctor v. White*, 155 S.W.3d 438, 441 (Tex. App.–El Paso 2004, pet. denied) (finding appellants waived challenge to summary judgment on several claims because their argument consisted of several pages referring to evidence in support of factual allegations without a single reference to relevant case or legal principle). Appellant is required to attack every independent ground upon which the trial court could have granted summary judgment as to this claim. *See Ramco Oil & Gas Ltd. v. Anglo-Dutch (Tenge) L.L.C.*, 207 S.W.3d 801, 826 (Tex. App–Houston [14th Dist.] 2006, pet. denied). Because appellant has failed to do so, we conclude the trial court did not err in granting summary judgment as to appellant's DTPA claim.

8

## IV. Conclusion

We conclude that the trial court did not err in granting INB's no evidence motion for summary judgment.[3]  We overrule appellant's lone issue on appeal and affirm the judgment of the trial court.

_____
ROGELIO VALDEZ,
Chief Justice

Memorandum Opinion delivered and filed
this the 20th day of March, 2008.

---

[3]  Because of our disposition, we need not address whether INB's traditional motion for summary judgment was properly granted.  *See* TEX. R. APP. P. 47.1.