Charles L. FLEMING, Appellant,

v.

TEXAS COASTAL BANK OF PASADENA and Billy F. Holcomb, Appellees.

No. 14–00–01069–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 17, 2002.

Rehearing Overruled Feb. 14, 2002.

Olney G. Wallis, William L. Bowers, Jr., Joseph Leo Lanza, Houston, for appellant.

Bertrand C. Moser, Gregory M. Clark, Houston, for appellees.

Panel consists of Chief Justice BRISTER and Justices FOWLER and SEYMORE.

## OPINION

SCOTT BRISTER, Chief Justice.

This is a suit by a victim of a swindle attempting to recoup his investment, not from the swindler, but from the swindler's bank. Finding no basis for doing so, we affirm.

In March of 1997, appellant Charles L. Fleming attended an investment seminar concerning WinterHawk West Indies, Ltd., a venture operated by Robert Cord. At the seminar, an investment adviser distributed a brochure listing appellees Texas Coastal Bank of Pasadena and Billy Holcomb (its president) as references. According to the brochure (which appellees never saw), Holcomb reported Cord's bank history as "satisfactory," his credit and loan payment history as "good," and a "high comfort level."

Fleming later met with Cord, who told him that for an investment of $280,000.00, Fleming would get his investment back in 45 days, and another $280,000.00 every month for the next ten months. Finding this incredible offer irresistible, Fleming agreed.

Accordingly, Fleming withdrew $280,000.00 from his retirement account and met Cord at Texas Coastal Bank. Cord told him to purchase a CD from the bank in WinterHawk's name that WinterHawk would then use as collateral to secure a loan.

While the documents were being prepared, Cord walked away for a brief moment. Fleming took the opportunity to ask Holcomb what he knew about Cord. According to Fleming, Holcomb told him Cord generally carried six figures in his account, was a "good customer," and though he "didn't really understand all of Cord's business, but that, obviously, you know, he had good business."

After Fleming purchased the CD, WinterHawk used it to obtain a loan from the bank. Needless to say, WinterHawk defaulted, and the bank foreclosed on Fleming's CD. Cord was subsequently convicted for his involvement in this and similar fraudulent investment schemes.

Fleming sued the bank and Holcomb alleging negligence, negligent misrepre-

sentation, fraud, and conspiracy. Texas Coastal Bank and Holcomb filed traditional and no-evidence motions for summary judgment that the trial court granted without stating the grounds. Fleming appeals from that order.

### Duty to Disclose

Fleming's claims are based primarily on non-disclosures by appellees.[1] Specifically, he contends appellees were obligated to tell him that Cord was a new customer, his accounts had frequent returned items, he never took out any loans, he had traveled with Holcomb to Belize in an attempt to start a banking venture there, and a grand jury had subpoenaed records from his accounts at the bank.

■ Non-disclosure is neither fraudulent nor negligent unless there is a duty to disclose. *See Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001). The appellees argue they had no duty to disclose banking information about Cord to Fleming. Fleming seeks to impose this duty because: (1) the bank owed him a fiduciary duty as a customer when he bought the CD; (2) the bank induced him to buy the CD; (3) the bank was obligated to provide full disclosure after making a partial disclosure, and (4) public policy requires imposition of a duty of disclosure.

■ Generally, a duty of disclosure arises only in confidential or fiduciary relationships. *Insurance Co. of North America v. Morris,* 981 S.W.2d 667, 674 (Tex. 1998). The relationship between a bank and its customer is generally not a fiduciary one. *See Bank One, Texas, N.A. v. Stewart,* 967 S.W.2d 419, 442 (Tex.App.-Houston [14th Dist.] 1998, pet. denied).

Because Fleming had never done business at the bank before, there is no evidence of a long-standing relationship of trust that might create an exception. *Morris,* 981 S.W.2d at 674. Moreover, Fleming's complaints do not relate to his transaction with the bank; it is undisputed the bank issued and paid the CD according to its terms. Due to the bank's limited role in Fleming's investment, appellees had no duty to disclose unfavorable facts they knew about Cord. *See id.* at 675 (holding that a company acting only as surety for investor's notes had no duty to disclose unfavorable facts it knew about investment company's president). We hold appellees owed no fiduciary duty to Fleming.

■ Second, no duty of disclosure arises merely because the bank wanted to sell Fleming a CD. The evidence of inducement is scant-Fleming admits coming to the bank to buy a CD at Cord's instruction, not because of any inducement by the bank. But in any event, no general duty of disclosure arises between parties contemplating a contract. A party may not procure a contract by fraud. *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.,* 960 S.W.2d 41, 46 (Tex.1998). But for non-disclosure to constitute fraud, the duty of disclosure must arise from somewhere else.

■ Third, taking appellees' partial disclosures as a whole, they were not so misleading as to require further disclosure. This Court has found a general duty to disclose information in arm's-length business transactions if a party makes a partial disclosure that, although true, conveys a false impression. *Anderson, Greenwood & Co. v. Martin,* 44 S.W.3d 200, 213 (Tex. App.-Houston [14th Dist.] 2001, no pet.

1. Fleming presented evidence that Cord's previous bank had closed his account because the large transfers to and from his account appeared suspicious. But other than his negligent misrepresentation claim, Fleming does not assert that appellees' actions fell below any applicable standard of care.

**462**

h.).[2] But in this case, Fleming admits Holcomb told him "he didn't really understand all of Cord's business, but that, obviously, you know, he had good business." In this context, no reasonable person could infer that Holcomb was vouching for the soundness of Fleming's investment. Holcomb's other comments, standing alone, might have given Fleming a false impression about the length, nature, or quality of Cord's banking relationship, but Fleming was not interested in being his banker. His interest was in the security of his investment, and Holcomb specifically denied any special knowledge of that.

■ Finally, we decline to create a new duty of non-disclosure as a matter of public policy in this case because of the Hobson's choice it would create for banks. A policy requiring banks to disclose to one customer the private banking information of another would in many cases violate state and federal law. *See 12 U.S.C. § 3403; Tex. Fin.Code § 59.006* (concerning confidentiality of banking records). It would also require banks to discourage one customer from doing business with another, inviting claims for tortious interference with their contractual relations. In this case, Fleming also would require disclosure of the grand jury subpoena, even though the subpoena itself warned that disclosure could be punished by five years' imprisonment and a $250,000.00 fine. *See 12 U.S.C. 3420(b); 18 U.S.C. 1510(b).*

Finding no basis for a duty of disclosure under any of Fleming's theories, we overrule his first six issues.

### Remaining Issues

■ Fleming also contends Holcomb's affirmative representations (as opposed to his non-disclosures) were fraudulent. But

the only evidence presented of falsity was that the number of returned items and level of activity in Cord's accounts made other bankers uneasy. This is insufficient to take the statements about Cord's banking history out of the realm of opinion. *See Transport Ins. Co. v. Faircloth,* 898 S.W.2d 269, 276 (Tex.1995) (holding opinion cannot be a misrepresentation). Fleming also fails to point to evidence that Cord's account generally contained materially less than "six figures." We overrule appellant's seventh, eighth and ninth issues.

Fleming's remaining issues attack affirmative defenses raised by the bank. Because we find no evidence to support Fleming's causes of action, we need not address them.

The judgment below is affirmed.

2. The Texas Supreme Court has reserved the question whether a duty of disclosure arises

in these circumstances. *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex.2001).